Jeannie SMITH *v.* STATE of Arkansas

CA CR 82-54                                     640 S.W.2d 805

Court of Appeals of Arkansas
Opinion delivered October 13, 1982
[Rehearing denied November 17, 1982.*]

*MAYFIELD, C.J., would grant rehearing.

*Dowd, Harrelson & Moore,* by: *Gene Harrelson,* for appellant.

*Steve Clark,* Atty. Gen., by: *Alice Ann Burns,* Asst. Atty. Gen., for appellee.

LAWSON CLONINGER, Judge. Appellant, Jeannie Smith, was convicted by jury verdict of conspiring to commit capital murder in violation of Ark. Stat. Ann. § 41-707 (Repl. 1977), and received a sentence of seventeen years in prison.

The charge stemmed from the shooting death of appellant's husband, Wade K. Smith, which occurred on March 14, 1979 in Miller County. The appellant was alleged to have conspired with Fred Bloch, Linda Bloch and Larry Welch, whereby Larry Welch would cause the death of Wade K. Smith for money to be paid by appellant.

In a totally unrelated event, the state charged John L. Young and Allen Rogers with the murder of Wade K. Smith

and with conspiracy to murder Smith. The alleged conspiracy between Young and Rogers had no connection or relationship with the charges against appellant.

Appellant alleges numerous errors in the trial court and since we find merit in two of her points for reversal, we will discuss those points likely to arise in the retrial of the case.

First, appellant argues that the trial court erred in allowing oral statements of appellant into evidence following an alleged illegal arrest.

Appellant was arrested at a Houston, Texas airport at approximately 6:00 a.m., August 15, 1980, on a Texas fugitive warrant issued by a justice of the peace upon oral assertions by a Bowie County, Texas deputy sheriff that appellant was wanted on an Arkansas warrant. Appellant's position is that the arrest was illegal because no written affidavit or complaint was filed by the deputy sheriff, and that any statement given by appellant in the hours following the arrest would be inadmissible.

It is not necessary to determine whether the arrest was lawful, because, in any event, the appellant's oral statements were not tainted by the arrest. In *Sanders v. State*, 259 Ark. 329, 532 S.W.2d 752 (1976), the Arkansas Supreme Court held that pursuant to *Brown v. Illinois*, 422 U.S. 590 (1975), an illegal arrest will not vitiate every confession made subsequent thereto. A confession which is made by an act of free will unaffected by the initial illegality will not be excluded at trial. This determination of the voluntariness of a confession must be answered on a case-by-case basis, applying the standard of *Wong Sun v. United States*, 371 U.S. 471 (1963); i.e., "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."

In the instant case, the evidence shows that appellant was read her *Miranda* rights at the airport and was transported by automobile from the airport to the home of a

Texas magistrate. A stop was made at a sheriff's sub-station to call the judge, and while there appellant asked that her sister be notified about what had occurred and what to do with her children and her car. The message was phoned in by a Texas officer at the sub-station. At no time did appellant ask to speak to an attorney. Within an hour after her arrest appellant appeared before the magistrate. The magistrate advised appellant of her *Miranda* rights and appellant indicated that she understood those rights. She did not request to see an attorney.

Appellant was then driven by automobile to Texarkana, Texas, and on the way, they stopped for breakfast. Appellant was advised that she had been implicated in the murder of Wade Smith by statements made by Linda Bloch. Appellant stated that what Linda Bloch said was true about arranging for the murder of Wade Smith. Appellant asked to talk to the Miller County prosecuting attorney, and the prosecuting attorney again reminded her of her *Miranda* rights. Appellant then indicated her involvement in helping set up the murder and related a previous attempt that had failed. Appellant then asked to speak to her attorney about extradition, and she talked with her attorney for some 45 minutes. At 3:00 p.m. appellant was taken before a Bowie County magistrate where bond was set.

In *Pearson v. State*, 414 S.W.2d 675 (Tex. 1967), the Court of Criminal Appeals of Texas held that every confession following an illegal arrest is not ipso facto inadmissible. The confession must be tainted by an illegal arrest. In *Pearson*, the court held that the state had shown by clear and convincing evidence that the connection between the arrest and the statement had become so attenuated as to dissipate the taint. The court noted that defendant had been taken within twenty-three minutes after arrest before a magistrate who informed defendant of his constitutional rights and afforded the defendant an opportunity to obtain assistance of counsel. Furthermore, the court found that the record did not show that defendant had been held incommunicado for an extended period of time, denied food or drink, or critically deprived of his capacity for self-determination.

Based upon the facts of this case, the trial court properly ruled as admissible the oral statements of appellant since they were freely and voluntarily given and not the product of an illegal arrest. The illegal taint, if any, was removed by the appellant being advised of her *Miranda* rights on three occasions; being taken before a Texas magistrate within an hour of her apprehension; being provided with breakfast and her family being advised where she was; and by being granted access to her attorney upon request. There is no evidence that the improper arrest, if improper, was exploited by the state to elicit a statement.

Second, appellant argues that the trial court improperly permitted Linda Bloch to testify concerning statements of another co-conspirator. We agree that Linda Bloch's testimony was inadmissible, because she was permitted to testify concerning what Fred Bloch told her after the object of the conspiracy was completed.

Uniform Rules of Evidence, Ark. Stat. Ann. § 28-1001 (Repl. 1979), Rule 801 (d) (2) (v) provides:

> A statement is not hearsay if: . . . it is . . . a statement by a co-conspirator during the course and in furtherance of the conspiracy.

The statements made by Fred Bloch to Linda Bloch related the details of the murder, which had been related to Fred Bloch by Larry Welch, after the death of Wade Smith, and Fred Bloch then told Linda Bloch of Larry Welch's flight from the state.

Appellee argues that the conspiracy continued after the death of Wade Smith by actions concealing the identity of the actual murderer. That argument was clearly rejected in *Krulewitch* v. *U.S.*, 336 U.S. 440 (1949), which held that a statement made by a co-conspirator after the central aim of the conspiracy is made is not admissible and that the exception to the hearsay rule does not extend to concerted action to conceal the crime. Therefore, we hold that this point merits a reversal.

Third, appellant argues that the trial court improperly refused to allow the introduction of a videotaped confession of John Young. The court did allow a transcription of the tape to be read into evidence, and the transcription itself was introduced as an exhibit, but the court refused to admit the videotape itself. Appellant attempted to introduce the videotape in order to impeach the testimony of John Young, and in an effort to permit the jurors to determine firsthand from the videotape the demeanor of John Young and allow the jury to test his credibility while making the confession. Uniform Rules of Evidence, Ark. Stat. Ann. § 28-1001 (Repl. 1979), Rule 804 (b) (3), provides that a statement against interest is not excluded by the hearsay rule if the declarant is unavailable as a witness and the statement tends to subject him to criminal liability.

Under Rule 804 (a) (3), a witness is "unavailable" if he testifies to a lack of memory on the subject matter of his statement, and John Young testified to a lack of memory concerning his alleged confession. Inasmuch as the trial judge admitted the statement into evidence for the purpose of impeachment, and that finding conforms to Uniform Rule 804, the only question we are concerned with is whether the videotape itself is admissible. Rule 1001 (2) of the Uniform Rules of Evidence defines "photograph" to include videotapes, and Rule 1002 provides that to prove the content of a photograph, the original is required except as otherwise provided by rule or statute. We hold that the videotape is admissible. The tape is the original evidence of John Young's statement, and the transcribed statement taken from the tape was a substitute. Appellant was entitled to have the original evidence of the statement introduced.

Fourth, appellant argues that the trial court erred in refusing to hear defense motions because they were not timely filed, or alternatively, the court abused its discretion in refusing to grant a continuance. We do not review this point, since it is unnecessary in light of the fact that there will be a new trial. See Patterson v. State, 267 Ark. 436, 591 S.W.2d 356 (1979).

Fifth, appellant argues that the court erred in refusing

to allow Officer Bolton's testimony concerning statements of John Young about the contents of Wade K. Smith's truck. During John Young's confession, he apparently made statements to Officer Bolton concerning the contents of the truck. This statement was not introduced into evidence, and the statement by Mr. Young was apparently lost by the sheriff's office. At any rate, it was not introduced into evidence and furthermore was not within the statements of John Young presented at the hearing for an offer of proof. During cross examination, counsel for the defense attempted to ask Officer Bolton questions concerning John Young's statement. The state objected to the testimony on the basis that it was hearsay. Counsel for the defense cited Rule 804 (b) (3) of the Uniform Rules of Evidence, which is an exception to the hearsay rule if the declarant is unavailable as a witness and the statement tends to subject him to criminal liability. However, this rule also provides:

> A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

This rule was discussed at length in the case of *Welch v. State,* 269 Ark. 208, 599 S.W.2d 717 (1980). The question is whether the trial judge abused his discretion in finding that the statement was not clearly shown to be trustworthy. Trustworthy means deserving of confidence; dependable; reliable.

In the instant case, the trial judge never made a preliminary finding as to the trustworthiness of the statement. In fact, the trial judge did not give a basis for excluding the statement when requested by counsel. Since this case is to be remanded back to the trial court for a new trial on other points, if this situation arises again on a new trial, the trial judge should make a determination regarding whether or not there are corroborating circumstances which clearly indicate the trustworthiness of the statement pursuant to Uniform Rules of Evidence, Ark. Stat. Ann. § 28-1001, Rule 804 (b) (3).

Appellant's sixth point for reversal is that the court erred in denying defendant's motion to disqualify Deputy Prosecuting Attorney Charles Walker. The prosecuting attorney, Jim Gunter, was present when appellant made oral statements indicating her guilt at the Texarkana Sheriff's Office. Consequently, Mr. Gunter was called as a witness for the state to relate the conversation he had with appellant at the time. Mr. Gunter withdrew as counsel for the state and Charles Walker was appointed to try the case for the state as deputy prosecuting attorney. Appellant filed a motion to disqualify the deputy from trying the case because he was a law partner of Mr. Gunter's. Appellant argued that any of the prosecuting attorney's deputies were disqualified and that a special prosecutor should be located.

This issue was answered in the case of *Ford* v. *State,* 4 Ark. App. 135, 628 S.W.2d 340 (1982). In that case it was held that a trial court did not abuse its discretion in failing to disqualify the entire staff of a prosecuting attorney who was to appear as a witness in a criminal trial. Pursuant to *Ford, supra,* we hold that it was not an abuse of discretion for the trial judge to refuse to appoint a special prosecutor in this case when the prosecuting attorney was to be a witness.

Appellant's seventh point for reversal is that the court erred in refusing to allow appellant to call Deputy Prosecuting Attorney Kirk Johnson as a witness. Appellant attempted to call Mr. Johnson as a witness to testify to a phone call he allegedly received from Wade Smith two days before he was killed, advising him that he wanted to speak with him. The purpose of this testimony would be to show that Wade Smith was to implicate John Young and Allen Rogers in a charge of rape and consequently, give them a motive for murder. This would, in turn, tend to exonerate appellant from guilt. However, this statement was clearly hearsay and properly excluded under Uniform Rules of Evidence, Ark. Stat. Ann. § 28-1001, Rule 801 and Rule 802 (Repl. 1979). We hold that this does not come within any of the exceptions to the hearsay rule and appellant has not cited us to any rule. The trial judge's decision to exclude this statement was proper on the basis that it was hearsay not within any exception.

This case is reversed and remanded for a new trial.

MAYFIELD, C.J., dissents.

GLAZE and CORBIN, JJ., would also reverse as to Point 6.

CRACRAFT, J., not participating.

MELVIN MAYFIELD, Chief Judge, dissenting. The majority opinion holds that this case should be reversed for two reasons: (1) a co-conspirator's statement made after the conspiracy ended was introduced into evidence, and (2) a videotaped confession of a witness was not allowed into evidence.

I do not think the case should be reversed for either reason.

Appellant was charged with capital murder, Ark. Stat. Ann. § 41-1501 (Repl. 1977), and with conspiracy to commit capital murder, Ark. Stat. Ann. § 41-707 (Repl. 1977). She was found guilty of the conspiracy charge which only requires an agreement with someone to aid in the planning or commission of the crime and an overt act in pursuance of the conspiracy.

There was testimony by Linda Bloch that appellant told Linda that appellant's husband, Wade Smith, abused her and her children; that there was a $100,000.00 life insurance policy on Wade's life; that it would be worthwhile if someone killed him; and that she wanted to know if Linda's husband, Fred, would do something about it.

Linda testified that she told Fred about appellant's statement and as a result there was a discussion between appellant and Fred, with Linda present, in which Fred agreed to get in touch with someone who would do the job. Linda said Fred called Larry Welch, with whom Fred had been in prison, and Larry came to Texarkana from California and stayed at the Bloch home. An attempt on Wade Smith's life failed and Larry went back to California.

Later, Linda was present when Fred and appellant discussed making a second attempt on Wade's life. They agreed it would be done at Wade's farmhouse and that appellant would pay $10,000.00 to have it done. Linda said appellant gave Fred money for Larry's expenses to come back to Texarkana; that he arrived on a Tuesday and that same day Linda drove Fred and Larry out to Wade's farmhouse for them to look it over; and that the next morning Fred and Larry got up early and left the house.

Linda testified that Fred was supposed to meet Wade at the farmhouse that morning to help Wade with some doors and, at Fred's request, she called Wade and told him Fred would be a little late but would be there. Later that morning Larry called her and said it was "okay" which was a planned signal that meant Wade had been killed. She then went to appellant's place of business and told her that Larry had called and appellant gave Linda a package to give Fred, Linda testified that Fred had told her that the package would be the money appellant was to pay for Wade's killing.

This evidence was sufficiently connected by other evidence in the record, especially appellant's statement made shortly after arrest, so as to be admissible under Uniform Evidence Rule 801 (d) (2) (v) and the cases of *Patterson* v. *State,* 267 Ark. 436, 591 S.W.2d 356 (1979) and *Smithey* v. *State,* 269 Ark. 538, 602 S.W.2d 676 (1980). Both appellant's brief and the majority opinion concede this. But what they contend was inadmissible is Linda's testimony that two days after Wade Smith's funeral Fred told her that Larry told him that Larry got in the back window, waited in the hallway for Wade, and when Wade came in the house Larry shot him.

I submit that the admission of that evidence is not prejudicial error. All it can prove is that Larry in fact killed Wade and that was not even necessary for appellant to be guilty of conspiracy. Without that evidence, there was evidence *conceded to be admissible,* that Larry killed Wade. And as proof that there was no prejudice, the jury did not find appellant guilty of capital murder and fixed her sentence for conspiracy at only seventeen years instead of the

maximum of fifty years which it could have fixed. Ark. Stat. Ann. §§ 41-707 and 41-901 (Repl. 1977).

In *Weber v. State*, 250 Ark. 566, 466 S.W.2d 257 (1971), the court said if the testimony objected to was inadmissible it certainly had not been demonstrated that it was prejudicial and, therefore, no error could have occurred. In *Martin v. State*, 248 Ark. 188, 451 S.W.2d 453 (1970), the court said that the admission of evidence showing motive was not prejudicial in a prosecution for second degree murder where the defendant was convicted of the lesser offense of voluntary manslaughter in which motive is not a necessary element.

The court's refusal to admit the videotaped confession involved the testimony of a witness by the name of John Young who was called to the stand by the defense. This man was asked if he murdered Wade Smith and he said he did not. He admitted, however, that he had previously given a statement in which he stated he did kill Smith but testified that he was forced to make the statement by the police who locked him up in jail, without a phone call or lawyer, and who hit him in the mouth and "stuff like that."

A statement by Young had been videotaped and this was offered in evidence by appellant and overruled by the court. I fail to see any reversible error in the trial court's refusal to admit the tape.

In *Donnelly v. United States*, 228 U.S. 243, 273, the United States Supreme Court said:

> In this country there is a great and practically unanimous weight of authority in state courts against admitting evidence of confessions of third parties made out of court and tending to exonerate the accused.

As *Donnelly* explained, such evidence is "mere" hearsay. Under Uniform Evidence Rule 801, however, a prior statement is not hearsay and may be considered as substantive evidence in a civil case *but this is not true in a criminal case* unless the prior statement was made under oath and subject to the penalty of perjury. *David v. State*, 269

Ark. 498, 601 S.W.2d 864 (1980); *Hackett* v. *State,* 2 Ark. App. 228, 619 S.W.2d 687 (1981); Uniform Evidence Rule 801 (d) (1) (i).

Since it is not even contended that the videotape was given under oath, it clearly was not admissible as substantive evidence from which the jury could find that John Young in fact killed Wade Smith.

It is true that a prior inconsistent statement may be admitted for the limited purpose of impeaching a witness. *Comer* v. *State,* 222 Ark. 156, 257 S.W.2d 564 (1953); *Hackett, supra.* But here Young admitted that he said in his previous statement that he killed Wade Smith. In that situation there was no necessity for proving the prior statement and it was therefore not admissible either by videotape or by typed transcription. *Humpolak* v. *State,* 175 Ark. 786, 300 S.W. 426 (1927). If, however, the statement was admissible, the typed transcription was introduced and I would not reverse this case just so a jury could view a videotape which, at most, could only prove that John Young was untruthful. Uniform Evidence Rule 403 provides that even relevant evidence may be excluded upon considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

I would affirm.